## W. F. CROSS et al., executors, *v.* M. LEVY & Co.

**Supreme Court — New Trial — Rulings Upon — When Not Reviewable.**

The action of the lower court in overruling a motion for a new trial will not be reviewed in the Supreme Court unless the record shows exceptions to it.[1]

**Evidence — Custom.**

It is error to admit evidence of a custom which is so unreasonable and against common right that no one would be compelled to submit to it.[2]

**Same — Competency of.**

It is competent to introduce evidence which tends to support the issue.[3]

I. Sheppard and Henry Barger formed a partnership in 1875 to engage in the mercantile business in Lexington, Miss. They continued in business for several months, and Sheppard died testate, naming W. F. Cross and D. N. Foose as his executors. Under the partnership agreement, Sheppard furnished the capital

---

[1]

This court will not set aside a verdict on the ground that it is excessive, unless all the evidence be embraced in the bill of exceptions. Webster *v.* Tiernan, 4 How. 352.

This court cannot grant a new trial, unless the judgment of the court below, overruling the motion for a new trial, be excepted to. Scott's case, 31 Miss. 473.

And a legal verdict, erroneous only as to the amount, will not be disturbed in this court, unless there was a motion for a new trial in the court below, and a bill of exceptions taken, embodying the evidence. Kelly *v.* Brown, 32 Miss. 202; Phipps *v.* Nye, 34 Miss. 330; Walker *v.* Jones, 44 Miss. 623.

But where the verdict manifestly exceeds the amount claimed in the declaration, it will be set aside, and a *venire de novo* awarded, though no motion was made in the court below for a new trial, and no bill of exceptions was taken. Lester *v.* Barnett, 33 Miss. 584.

The overruling a motion for a new trial must appear in the record proper. It is not sufficient that it appears in the bill of exceptions. Jefferson *v.* State, 52 Miss. 767. (This is changed, Code 1880, § 1418; Code 1892, § 4357.)

If a case is submitted to the judge, without a jury, a general bill of exceptions, embodying the testimony, may be taken to his judgment, and such bill will be considered on appeal, though no motion for a new trial was made. Section 651, Code 1871, authorizes but does not require such a motion. Nicholson *v.* Karpe, 58 Miss. 34.

and Barger managed the business. He had some dealings with M. Levy & Co. for the firm, and had also an individual account with them. In a settlement of the firm account with M. Levy & Co., Barger paid an individual account of his own out of the firm money, and also paid an individual note for $165, which he had given for a buggy bought. M. Levy & Co. brought this suit against Henry Barger, the surviving partner, and W. F. Cross and D. N. Foose, the executors of Sheppard, on an open account for $62.29. The executors filed, as an offset to this account, the two items which plaintiffs had credit for as the individual indebtedness of Barger, and asked judgment for the difference. From a verdict and judgment for plaintiffs, defendants appeal.

On the trial it was admitted by defendants that the items of the account sued were correct and the amount was due. E. F. Noel testified for defendants that he had been appointed receiver of the firm assets of Sheppard & Barger, and found a statement of a settlement between them and M. Levy & Co., made in February, 1877, showing that they were indebted to Sheppard

Where the record is silent as to what disposition is made of a motion for a new trial, this court will not review the action of the lower court in overruling it. Railroad Co. v. Pressley, 45 Miss. 66.

Where the record shows no exception to a peremptory instruction; nor motion for new trial based on error in the instructions, judgment will be affirmed. Evans v. Clark, 24 So. 532.

Where two former verdicts for appellees had been set aside for errors not of law, appellant could not, on a third verdict for appellees, be required to move to set aside the third verdict, in order to bring his case before the court of appeals, by general bill of exceptions to the action of this court in overruling his motion. The proper course was pursued by excepting to the giving and refusing the instructions, and in presenting the appeal on a special bill of exceptions. I. C. R. R. v. Minor, 69 Miss. 710; 11 So. 101.

The appellate court will not assume matters of fact raised by counsel which were not introduced in the court below. Simmons v. Felder, 1 Miss. Dec. 484, and cases cited in notes.

An appeal will not lie where there was no motion for new trial. Armstrong v. Gaddis, 32 So. 917.

2

It is competent to show by the custom of merchants that, when cash is not paid for goods, the sale is on the customary credit. Effinger v. Henderson, 33 Miss. 449.

A particular custom of merchants only affects contracts made in that locality where it is shown to exist. Allen v. Lyles, 35 Miss. 513.

& Barger in the sum of $822.43 and held an account against them for $322.88, and the remainder of the account was paid by crediting on the account the sum of $37.25 and individual account of Barger's and a note of Barger's of $165, and giving their due bill for the balance; that the books of Sheppard & Barger showed nothing in regard to this settlement. J. H. Levy testified that the two firms had mutual dealings; that Henry Barger, during the lifetime of Sheppard and after his death till the firm was dissolved, was the active manager of the firm, and in February, 1877, he went to the office of Levy & Co. for a settlement of accounts, and, upon Barger's instruction, his individual account was deducted from the amount M. Levy & Co. owed Sheppard & Barger, and he also directed the note which had been given to J. H. Levy be paid to the party to whom it had been transferred by J. H. Levy, one Drennan, which was done out of the balance found to be due Sheppard & Barger on the settlement. This note had been given by Barger to J. H. Levy for a buggy sold him by said J. H. Levy; that said note never belonged to M. Levy & Co., but belonged to witness; that in 1877 it was and long had been a custom with firms doing business in Lexington and elsewhere to allow individual accounts of members of firms to be included in and settled with firm accounts; that during the life of Sheppard an individual account of Barger's to M. Levy & Co. had been paid out of the firm money with the knowledge of

A custom is inadmissible to explain a transaction, unless it be shown that it is established, existing at the time and place of the transaction, and known to the parties; it must also be certain, uniform, reasonable, and not contrary to law. Shackelford v. N. O. J. & G. N. R. R. Co., 37 Miss. 202.

Where plaintiff has sold many goods to defendant, and the invariable rule has been that the sales were on sixty days' time, it will be inferred that their dealings are to be governed by the custom unless something to the contrary is shown. Bailey et al. v. Henry & Co., 1 Miss. Dec. 565, and cases cited in note 1.

3

The test of admissibility of evidence is its relevancy and not conclusiveness. It is for the jury, not the court, to decide as to its weight. Everman v. Robb, 52 Miss. 653.

It is error to admit testimony which does not prove or tend to prove the issue. Railroad Co. v. Tyson, 46 Miss. 729.

Evidence of facts not in issue, but so connected with the matter at issue as to form a part thereof, is relevant and admissible. Stein v. Brunswick Co.. 69 Miss. 277; 13 So. 731.

Sheppard and without objection from him.   Defendant's objection to the evidence of the custom was overruled and they excepted.   D. S. Foose testified that the buggy purchased by Barger from J. H. Levy was sold to Lee Payne in payment of an account due him by the firm of Sheppard & Barger for hauling; that Barger bought a new buggy with the funds of the firm and claimed it as his own, and got the new buggy from the firm by exchanging the old buggy sold to Payne.   On cross-examination, he testified that the new buggy spoken of was, on the dissolution of the firm of Sheppard & Barger, claimed by the executors of Sheppard's will as the property of the firm, because bought with the funds of the firm, and was seized under a writ of sequestration at the instance of the executors in January, 1878; that it was bonded by Barger, but did not know what became of it.   The testimony given on cross-examination was objected to by defendants. The objection being overruled, they excepted.

APPEALED from Circuit Court, Holmes county, C. H. CAMPBELL, Judge.

Reversed, October 31, 1881.

*Attorney for appellant, E. F. Noel.*

*Attorney for appellee, H. S. Hooker.*

Brief of E. F. Noel:
*   *   *   The receiver of the assets of Sheppard & Barger, while looking over a box of loose papers, found a statement, made out in the handwriting of M. Levy & Co.'s bookkeeper, and other papers, showing that on February 5, 1877, the firms of M. Levy & Co. and Sheppard & Barger had had a settlement of their mutual accounts for the previous year, and that in this settlement M. Levy & Co. had credited on a firm account due by them to Sheppard & Barger $37.25 and $165, being amounts due by Henry Barger individually on a note and an account.   The books of Sheppard & Barger showed nothing in regard to this transaction; and Barger did not even charge himself in his individual account with Sheppard & Barger the amounts so credited for his individual note and account.

After learning of this transaction the receiver refused to pay M. Levy & Co.'s $52.84 account, and told them that he would go back to the settlement of February, 1877, and claim the $37.25, which was deducted from an account due Sheppard & Barger to an individual account of Henry Barger's. Nothing was then said about the $165 that had been deducted from the same firm in paying Barger's individual note. J. H. Levy, who, though not a member of the firm of M. Levy & Co., was their active business manager, testified that if the receiver had told him or M. Levy & Co. that the $165 deducted for Barger's note was intended to be claimed on a setoff, that M. Levy & Co. would never have brought this suit. Their action in attempting to dismiss their own suit in March term, 1880, of the Circuit Court, bears his statement out.

It is undenied that the setoff filed by appellants was admitted by M. Levy & Co., at a number of times, "to be correct, except that they claimed that the individual debts of Henry Barger for $165 and $37.25 were proper and legal credits upon the accounts due the firm of Sheppard & Barger and were a payment of it *pro tanto*, as Henry Barger, representing the firm, had assented to it;" and whether or not these credits of individual indebtedness on firm account is or is not a legal payment, is the only question in this case.

The authorities on this point are plain and clear, and we will cite but few.

"The release of a partnership debt by one partner will be void as to the firm, if taken in discharge of the separate debt of the partner releasing it." Story on Contracts, Vol. 1, § 310.

"In case of a partner paying his own separate debt out of the partnership funds, it is manifest that it is a violation of his duty and of the rights of his partners, unless they have assented to it. The act is an illegal conversion of the funds." 11 S. & M. 326, and to the same effect 34 Miss 352.

"A surviving partner cannot bind the firm nor transfer the partnership effects to pay a debt of his own." See 8 S. & M. 280.

Appellees attempt to exempt themselves from the action of this rule by trying to show:

First—That Sheppard, during his lifetime, knew of and assented to some such transaction; and that they did not know that a partner did not have authority to act as he did.

Second—That the firm of Sheppard & Barger finally got the benefit of the buggy purchased by Henry Barger, and for which the $165 note was given.

I will take up these two points in the order named.

J. H. Levy testified that M. Levy & Co. had no knowledge of the want of authority in Henry Barger to make such a settlement as was had on February 5, 1877. This testimony explains the whole transaction. In other words, they did not know that one partner could not bind another by crediting an individual account on a firm account, and that they were honest in this belief. That a man's ignorance of law will neither excuse him from a civil liability nor a criminal prosecution is a proposition too plain to require a reference to authorities.

M. Levy & Co. next attempt to justify their action in the matter by showing it was the custom of merchants in Lexington to deal with each other in that way. For a custom to be legal it must be "immemorial, continued, peaceable, reasonable, certain, compulsory, and consistent." See Blackstone's First Book, p. 76.

This alleged custom is not shown to have possessed any one of these seven essentials. For instance, a custom to be legal must possess the sixth essential above referred to, viz: it must be compulsory—*i. e.*, "not left to the option of every man whether he will use them or no." Blackstone, p. 78.

This was certainly no custom of that nature, and therefore it was not legal.

In concluding his testimony, however, J. H. Levy does away with any point that could have been made the local custom by testifying that this same custom prevailed in every town in Mississippi and throughout the United States; a custom as universal as this would be law and not susceptible of oral proof; and, besides this, he testifies that it was equally the custom of M. Levy & Co. to credit the accounts of employes of merchants on firm accounts. * * *

Now, as to the defense that the buggy for which Henry Barger gave his $165 note was afterwards used in paying off firm indebtedness:

It is proved by D. N. Foose that the buggy purchased by Henry Barger from J. H. Levy was applied to Barger's individual uses for some time, and that Barger, without the consent of Sheppard's

executors, afterwards exchanged this old buggy for a new one, which was purchased with the money of the firm of Sheppard & Barger, and that the old buggy was then used in paying off a firm debt. The firm got the use of the old buggy by having to buy a new one for Barger's private use. Upon the dissolution of the firm, when it was found that Barger was largely indebted to the firm, and no property subject to execution except the buggy purchased, as before stated, with the firm's money, this buggy was attached under a writ of sequestration. After the buggy, for which the $165 note was given, had been purchased on Barger's individual credit, it could never be exchanged to a firm debt without the consent of Sheppard.

Story on Partnership, § 134, declares: "There are other cases which constitute exceptions to the general liability of partners for acts or contracts concerning the partnership business. * * * One of these is where in the very transaction, although it may be for the benefit or use of the partnership and in the business, yet the credit is exclusively given to the partner transacting it, upon his sole and separate liability. The law is exceedingly clear and well settled upon this point. If money is borrowed, or goods bought, or any other contract is made by one partner upon his own exclusive credit, he alone is liable therefor; and the partnership, though the money, property, or other contract is for their own proper use and benefit, or is applied thereto, will in no manner be liable therefor."

This doctrine was sustained to its full extent in this State in the case of Buck *v.* Mosley & Mallory, 2 Cush. 170. * * *

Brief of H. S. Hooker:

The record shows that this was a suit instituted by appellees against the appellants to recover a small sum due them by said appellants. The correctness of the account sued on is *undisputed.* The defense consists of an offset filed by the defendant, the items of which are composed of an alleged amount due to appellant on account of having used the assets of appellant in payment and discharge of a private debt of one of the partners of the firm of Sheppard & Barger, appellants, and the payment by said appellees, with the assets of Sheppard & Barger, of an individual note of Barger. As the issues upon the private note of Barger and his

private account are distinct, and two separate defenses are presented, it is best to separate the testimony upon the two points.
\* \* \*

The testimony of J. H. Levy and Henry Barger, uncontradicted as they are, undoubtedly show an implied assent on the part of Sheppard to such a use of the partnership funds. According to Levy's testimony, such was the usual custom amongst merchants. And also that Sheppard knew of and raised no objection to the individual purchases of Henry Barger being charged in and settlement with the firm accounts. Under this record the following questions arise:

1. Can, under any circumstances, a partner use assets of the firm in the payment of his private debts? If there can exist a state of facts under which the court will allow it, the case at bar presents such a state of facts.

2. Does the general rule that a partner cannot so use firm assets apply as against a partnership debtor when one partner directs the debtor to pay the amount of his firm debt to a third person, even though it goes to discharge the private debt of the partner?

3. Can one of the partners, against the protest of the other, use the firm name to recover what has been so paid out by the creditor? Can the guilty partner take advantage of his own fraud? Is it not only the non-assenting partner who can complain?

4. Are not appellants estopped by receiving and using the proceeds of the note in its application to the payment of a note due by the firm?

5. Are they not concluded by the election they have made to pursue the buggy itself by their attachment?

It is readily conceded that the application by one partner of firm assets to the payment of his individual debt will not be upheld by the courts. Such action is *prima facie* fraudulent. It is a badge or presumption of fraud. It is not conclusive, but is subject to explanation. The assent of the other partner will do away with such presumption. 55 Miss. 597.

That Sheppard assented to such disposition of the partnership effects is abundantly established by the uncontradicted testimony of J. H. Levy and Henry Barger. Sheppard frequently overlooked the account of Sheppard & Barger with Levy & Co., and

saw the individual purchases of Barger charged in the account, and raised no objection thereto, and was settled or paid by Sheppard & Barger. Such had been the custom with and amongst the merchants.

Here was certainly sufficient evidence of the assent of Sheppard; not only was it the custom amongst merchants, but Sheppard had positive knowledge and raised no objection to the two transactions. From these and other circumstances it was but natural for Levy & Co. to suppose that Barger had the authority, being the active business manager of the firm, to direct the appropriation of the proceeds of the sale of the cotton, or what was due Sheppard & Barger by Levy & Co. * * *

Appellants, upon every principle of justice, are estopped and precluded from collecting the $165. According to the testimony of their own witness, they have received the benefit of the transaction. The buggy was used (and may have been bought by Barger for that purpose) to pay off a debt due by the firm of Sheppard & Barger to one Lee Rhyne for $161. Having thus directly received the benefit of the buggy, in good conscience, they are estopped to proceed against Levy & Co. They would be reaping too much to recover this amount from Levy and hold themselves discharged of a debt for that amount paid for by the means of Levy & Co. If they claim the discharge from this debt effected thus by Barger, they ratify his purchase and the payment by Levy & Co.

It is true that another buggy was purchased subsequently by Barger, which Foose, one of the executors, very ambiguously says "he (Barger) got from the firm by exchanging the old buggy sold to Rhyne." If this be true, and there is not a word in the record to dispute or contradict it, then they are most certainly estopped from claiming offset as to the $165 note. No principle is more firmly established than that where a party has two remedies and adopts one he is forever estopped from prosecuting the other. Having once made his election, he must stand to it. According to the theory of appellants, they had two remedies—recourse against Levy & Co., or could treat the buggy as firm property and proceed against that. They could not possibly do both. In the early part of 1878 a bill was filed by Cross and Foose, executors, against Barger for a settlement of the partnership affairs, and the buggy was levied under a writ of sequestration, as having been

purchased with the funds of Sheppard & Barger. Appellants knowingly exercised their undoubted right to proceed against the buggy as the property of the firm. They had the two remedies, and they exercised their election as to the remedy they would pursue, and are now estopped from pursuing the other remedy. Bigelow on Estoppel, 503, 505.

OPINION.—COOPER, J.:

Because there does not appear in the record any exceptions to the action of the court below in overruling the motion for a new trial, we are precluded from an examination of all the questions argued by counsel. There does, however, appear two special exceptions taken to the action of the court in admitting certain evidence, and to these we address our attention. The evidence of the witness, J. H. Levy, as to the custom prevailing at Lexington and elsewhere in the year 1877, by which individual accounts against members of commercial firms were charged to the firms and paid by them, was improperly admitted. Such practice (if it existed) was so unreasonable and against common right that no man would be compelled to submit to it. It is impossible to believe that Levy & Co. extended credit to Barger relying upon a custom that some other person would pay their demand. The evidence given by the witness, Foose, on cross-examination, to which the second bill of exceptions was taken, was properly admitted. The controversy was as to whether or not the buggy was really bought for the firm, or treated as firm property by the representatives of Sheppard, because paid for by the assets of the firm, and the evidence tended to show that it was so treated.

*Judgment reversed.*